UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH ISON,

        Plaintiff,                               Hon. Richard Alan Enslen

v.                                            Case No. 4:05-CV-85

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 61 years of age at the time of the ALJ's decision and 57 years of age as of the date her insured status expired. (Tr. 19, 24, 57). Plaintiff obtained an Associates Degree and worked previously as an x-ray technician, CAT scan/ultrasound technician, and medical records clerk. (Tr. 64, 91-95, 101, 247).

Plaintiff applied for benefits on January 23, 2004, alleging that she had been disabled since July 26, 1994, due to a spinal injury, heart impairment, and hypertension. (Tr. 57-59, 63). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-49). On February 18, 2005, Plaintiff appeared before ALJ Gerald Rickert, with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 237-79). In a written decision dated April 29, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 19-24). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 7-13). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff's insured status expired on December 31, 2000. (Tr. 19, 60-61); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **MEDICAL HISTORY**

On July 27, 1994, Plaintiff injured her neck while pushing an ultrasound machine. (Tr. 223). Soon thereafter, Plaintiff participated in a series of diagnostic examinations. The results of an MRI examination of her thoracic spine were "normal." (Tr. 129). An MRI of her cervical spine revealed "diffuse" disc bulges at C5-6 and C6-7 with no evidence of focal disc protrusion. (Tr. 131-32). A CT scan of Plaintiff's cervical spine revealed: (1) a "small" spur at C5-6 with "mild" narrowing of the nerve root canal; and (2) a "small" disc protrusion at C6-7, with "mild" narrowing of the nerve root canal. (Tr. 134-35).

On August 18, 1994, Plaintiff participated in a myelogram examination of her cervical spine, the results of which revealed "mild" degenerative changes without evidence of spinal cord or nerve root compression. (Tr. 125).

On March 3, 1995, Plaintiff was examined by Dr. Christina Pareigis. (Tr. 219). Plaintiff reported that since beginning physical therapy she was moving "slightly more easily." Range of motion testing was "within functional limits" and Plaintiff exhibited symmetric strength. Dr. Pareigis instructed Plaintiff to continue participating in physical therapy. The doctor reported that Plaintiff could perform work activities subject to the following limitations: (1) no lifting more than 20 pounds; (2) no lifting in a flexed position; (3) no pushing or pulling more than 40 pounds; and (4) no overhead lifting or reaching. *Id.*

On April 10, 1995, Plaintiff was examined by Dr. Pareigis. (Tr. 215). Plaintiff reported that physical therapy was going "quite well" and that her activity tolerance and range of motion had improved. Plaintiff exhibited functional range of motion in her neck and upper extremities. Dr. Pareigis instructed Plaintiff to continue participating in physical therapy. The

doctor reported that Plaintiff's ability to perform work activities had increased. Specifically, the doctor reported that Plaintiff could perform work activities subject to the following limitations: (1) no lifting more than 20 pounds; (2) no lifting in a flexed position from floor to waist; (3) no pushing or pulling more than 50 pounds; and (4) no overhead lifting more than five pounds. *Id.*

On July 5, 1995, Plaintiff was examined by Dr. Pareigis. (Tr. 213). Plaintiff reported that she was experiencing increased neck pain which radiated into her left shoulder. Plaintiff exhibited "mildly limited" range of motion in her cervical spine and "tenderness" in her cervical spine and parascapular area. There was no evidence of neurologic compromise. The doctor concluded that Plaintiff suffered from "soft tissue strain." Plaintiff was instructed to continue her stretching/exercise program and "limit her prolonged posturing in the forward flexed position of the neck." *Id.*

On August 11, 1995, Dr. Pareigis reported that Plaintiff could perform work activities subject to the following limitations: (1) no lifting more than 20 pounds; (2) no prolonged flexion of the head and neck; (3) no pushing or pulling more than 50 pounds; and (4) no overhead lifting more than five pounds. (Tr. 212).

On February 11, 1999, Plaintiff participated in a nerve conduction study of her upper extremities, the results of which were "normal." (Tr. 209).

On August 30, 1999, Plaintiff was examined by Dr. Pareigis. (Tr. 208). Plaintiff reported that she was experiencing left-sided neck pain. Plaintiff exhibited "mildly limited" range of motion in her cervical spine with no evidence of spasm. An examination of Plaintiff's left shoulder revealed "slightly increased" pain when reaching behind her back, but the rotator cuff was intact. Plaintiff exhibited symmetric muscle stretch reflexes in her upper extremities. *Id.*

X-rays of Plaintiff's chest, taken on April 5, 2000, revealed "minor" ectasia of the aorta, "minor" chronic lung changes, and normal heart size. (Tr. 158). The examining physician characterized the examination as "essentially negative." *Id.*

On May 24, 2000, Plaintiff was examined by Dr. Pareigis. (Tr. 207). Plaintiff reported that she was experiencing "intermittent episodes" of neck pain which radiated into her left upper extremity. Plaintiff exhibited normal range of motion in her upper extremities and cervical spine. Plaintiff's muscle stretch reflexes were brisk and symmetric in her upper extremities. An examination of Plaintiff's left upper extremity revealed no evidence of trigger points. *Id.*

On August 23, 2002, Plaintiff participated in an exercise stress test in response to recent complaints of chest pain. (Tr. 152-53). Plaintiff's baseline electrocardiogram "showed normal sinus rhythm." (Tr. 152). Plaintiff exhibited "good" workload and heart rate during the examination, but there was evidence that she was experiencing "reversible myocardial ischemia." (Tr. 152-53). Plaintiff was advised to undergo a diagnostic coronary arteriography. (Tr. 153).

X-rays of Plaintiff's lumbosacral spine, taken on April 3, 2003, revealed "mild" levoscoliosis at the thoracolumbar junction, "moderate" disc space narrowing at L2-3, and spurring at L2-3 and L4. (Tr. 151). However, the alignment was "normal," the sacroiliac joints were "normal," and there was no evidence of "acute injury." *Id.*

On October 7, 2003, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "mild" osteoarthritic changes and "mild" degenerative disc disease. (Tr. 148-49).

On November 25, 2003, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed multilevel degenerative disc disease, without evidence of disc protrusion, spinal canal stenosis, or spinal cord abnormality. (Tr. 147).

On November 26, 2003, Plaintiff participated in a consultive examination performed by Dr. Edward Yaple. (Tr. 181-87). Plaintiff reported that she was experiencing pain in her neck and upper extremities. (Tr. 181). Plaintiff exhibited decreased range of neck motion, but there was no evidence of nerve root impingement. (Tr. 187). An examination of Plaintiff's upper extremities was unremarkable. The doctor concluded that the work restrictions previously imposed by Dr. Pareigis were "reasonable." *Id.*

On December 3, 2003, Plaintiff participated in a nerve conduction study, the results of which were "normal" with no evidence of radiculopathy, peripheral neuropathy, or peripheral nerve entrapment. (Tr. 190).

## **ANALYSIS OF THE ALJ'S DECISION**

**A. Applicable Standards**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) degenerative joint disease; (2) coronary artery disease with angina; and (3) dry eyes. (Tr. 20). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 22-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience,

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired, Plaintiff retained the capacity to perform light work[2] without frequent overhead reaching, stooping, standing, or crawling. (Tr. 22). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

The vocational expert testified that there existed approximately 155,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 269-73). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

      a.   The ALJ Properly Evaluated the Medical Evidence

On February 16, 2005, Dr. Pareigis submitted an affidavit regarding Plaintiff's condition. (Tr. 199-201). The doctor asserted that Plaintiff suffered from "neck pain" resulting from degenerative disc disease at C5-6. (Tr. 199). Dr. Pareigis asserted that as of the date Plaintiff's insured status expired, Plaintiff suffered from chronic pain, significant limitation of motion, severe headaches, dizziness, impaired ability to sleep, depression, and stress. (Tr. 200). According to the doctor, Plaintiff's ability to perform work activities (as of the date her insured status expired) was limited as follows: (1) she can occasionally lift 10 pounds, but can only rarely lift 20 pounds; (2) she

can never look down; (3) she can rarely turn her head to the right or left; (4) she can never look up; (5) she can rarely hold her head in a static position; (6) she experiences significant limitations with reaching, handling, or fingering; (7) she cannot keep her upper limbs in a static position; (8) she can sit for 20 minutes; and (9) she requires a sit-stand option. (Tr. 200-01). Plaintiff asserts that because Pareigis was her treating physician, the ALJ was obligated to accord controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

As detailed above, the medical evidence simply fails to support the extreme limitations articulated in Dr. Pareigis' affidavit, executed more than four years after the expiration of Plaintiff's insured status. As the ALJ correctly observed, the doctor's contemporaneous treatment notes do not even support the limitations identified more than four years later. (Tr. 202-32). Accordingly, the ALJ's decision to accord less than controlling weight to Dr. Pareigis' opinion is supported by substantial evidence.

b.  The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ discounted Plaintiff's subjective allegations of pain and disability, concluding that "the medical evidence does not support these symptoms to the degree alleged." (Tr. 21). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

12

> established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling pain and limitation are not supported by objective medical evidence. Moreover, Plaintiff's reported activities during the relevant time period are inconsistent with her allegations of total disability. In sum, there exists substantial evidence to support the ALJ's credibility determination.

### c. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 155,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon her response thereto.

### d. The ALJ Properly Considered All of Plaintiff's Impairments

Plaintiff asserts that the ALJ "did not consider the combined effects of [her] impairments." This argument is without merit. The ALJ identified and discussed Plaintiff's various impairments, specifically noting that the "combination of impairments" from which Plaintiff suffers does not render her disabled.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: July 28, 2006                     /s/ Ellen S. Carmody
                                       ELLEN S. CARMODY
                                       United States Magistrate Judge